UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIERRA BRANTLEY and<br>LIETTE PELLETIER<br>    Plaintiffs<br><br>v.<br><br>CK AUTO WHOLESALERS, LTD., and<br>WELLS FARGO BANK, N.A. d/b/a WELLS<br>FARGO DEALER SERVICES<br>    Defendants | CIVIL ACTION<br><br>COMPLAINT<br><br>TRIAL BY JURY<br>DEMANDED<br><br><br>AUGUST 29, 2012 |

## I. INTRODUCTION

1. This is a suit brought by consumers residing in Connecticut regarding the purchase and sale of a 2002 Volkswagen Jetta ("the Vehicle") pursuant to a retail installment sales contract ("the Contract"). Plaintiffs bring this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from Defendant CK Auto Wholesalers LTD, ("the Dealership") and Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services ("Wells Fargo"). The Plaintiffs claim that the Dealership violated the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Equal Credit Opportunity act, 15 U.S.C. 1691 *et seq.* ("ECOA"), and the Connecticut Retail Installment Sales Finance Act, C.G.S. § 36a-771(b) ("RISFA"), in the sale of the Vehicle to Plaintiffs; the Dealership also violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), and it committed breach of contract, breach of express warranty and breach of the implied warranty of merchantability by selling Plaintiffs a vehicle that was not in merchantable condition and is consequently also liable under the Magnuson-Moss Federal Warranty Act, 15 U.S.C. §§ 2301-2312

("Magnuson-Moss"). Furthermore, Plaintiffs claim that the dealership committed fraud by falsely representing that the Vehicle had been registered, and forgery by presenting Plaintiffs with falsified Connecticut Registration Certificate. Plaintiffs seek their damages, revocation of acceptance of the Vehicle, and declaratory relief regarding the underlying retail installment sales contract entered into by Plaintiffs to purchase the Vehicle. Alternatively, Plaintiffs seek rescission of the Contract. Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services ("Wells Fargo") is liable for the claims against the Dealership as the assignee of a retail installment sales contract for the purchase of the vehicle and because it has retained the benefit of that contract notwithstanding its knowledge of the Dealership's violations of RISFA.

     2.     Plaintiff Liette Pelletier ("Pelletier") is a natural person residing in Plainville, Connecticut.

     3.     Plaintiff Sierra Brantley ("Brantley") is a natural person residing in Bristol, Connecticut, and is the daughter of Plaintiff Pelletier.

     4.     The Dealership is a Domestic Corporation that operates an automobile dealership in Plainville, Connecticut.

     5.     Defendant Wells Fargo is a bank with headquarters in San Francisco, California.

     6.     Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 2310(d)(1)(B) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7. This court has jurisdiction over Wells Fargo because it regularly conducts business in this state and over the Dealership because it is organized under the laws of Connecticut and it regularly conducts business in this state.

8. Venue in this court is proper, because the Plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

9. On or around March 13, 2012, Brantley visited the Dealership with her fiancé with the intent to purchase a vehicle for herself.  At this time, Brantley spoke with a sales representative named Sal Vaccaro ("Vaccaro").

10. Brantley expressed interest in purchasing a 4 door sedan with low mileage.  Vaccaro recommended the Vehicle.

11. Brantley requested to test drive the Vehicle, to which Vaccaro responded that he was the only associate at the dealership that day and that he could not leave the Dealership, as there were other customers present.

12. Vaccaro told Brantley that the price of the car was $5,895.

13. This same day, Vaccaro took Brantley's credit information and processed a credit check.

14. After processing Brantley's credit, Vaccaro told Brantley that her application had been denied and that she would need a cosigner to obtain approval.

15.  Brantley was not sent written notice of her denied application within 30 days of denial.

16. Vaccaro proposed that Brantley contact her mother, Plaintiff Pelletier, and obtain her credit information so that Pelletier could cosign for the Vehicle.

17.     In an attempt to pressure Brantley into making a commitment, Vaccaro also prepared purchase documents for Brantley to sign that indentified Pelletier as the cosigner.

18.     Brantley did not sign the purchase papers because she had not spoken with Pelletier about the purchase.

19.     In a further attempt to pressure Brantley into a commitment, Vaccaro told Brantley that he needed a deposit and he falsely and deceptively told Brantley that there was another buyer who was willing to pay cash for the Vehicle.

20.     At this time, Brantley did not leave a deposit and left the dealership. Vaccaro told her to return the following day, and that he would have the purchase paperwork ready for her signature.

21.     The next day, after speaking with Pelletier, Brantley returned to the Dealership. Brantley told Vaccaro that she had discussed the sale with Pelletier, and that she could afford a $500 payment and that she needed payments to be below $200 per month.

22.     Vaccaro responded that he would give Brantley $900 for her 2001 Ford Focus ("the Trade-in") and that with a $500 down payment, the monthly payments would be $189.95.

23.     Brantley found the pricing to be agreeable, so she agreed to purchase the Vehicle on those terms. Vaccaro prepared a purchase order and a retail installment sales contract ("RISC") and requested that Brantley sign them.

24.     Although Brantley traded in a 2001 Ford Focus, the RISC stated that Brantley had traded in a 1999 Toyota Corolla.

25. As Brantley signed the papers, she requested copies for herself. Despite her request, Vaccaro continued to move her through the signing process and Brantley did not realize until sometime later that Vaccaro did not provide her with the requested copies.

26. On March 17, 2012, Pelletier went to the Dealership to sign the purchase order and the RISC. She arrived at the Dealership prior to Brantley because Brantley was at work.

27. At that time, Vaccaro requested a down payment of $1,195.

28. To this, Pelletier responded that she thought the down payment was $500. Vaccaro responded that the down payment was higher because of an assignment fee imposed by Wells Fargo.

29. Although Vaccaro requested $1,195, Plaintiffs' payment of the additional $695 was not reflected on the RISC; a violation of TILA.

30. Further, the $695 "assignment fee" was not disclosed as part of the finance charge nor the payment schedule on the RISC; a violation of TILA.

31. Prior to arriving at the dealership, Brantley told Pelletier that she had already signed all of the purchase paperwork. However, at the time Pelletier signed the purchase paperwork, she observed that many of the documents were not signed by plaintiff Brantley. Vaccaro told Pelletier that Brantley's missing signature was an oversight, and later requested that Brantley sign the remaining documents.

32. Plaintiffs completed the RISC on March 17, 2012; however, the Dealership did not give them a copy of the RISC at that time; a violation of TILA.

33. After Plaintiffs signed the RISC and purchase order, Vaccaro allowed them to take the Vehicle for a test drive. On the test drive, Plaintiffs identified several issues with the Vehicle, which they communicated to Vaccaro.

34. Vaccaro said that the Dealership would take care of the issues with the Vehicle, and that the Vehicle would be ready in a few days. Vaccaro's representations that he would repair the problems constituted an express warranty.

35. Despite that they had completed the purchase paperwork on March 17, 2012, Vehicle was not delivered to Plaintiffs until March 22, 2012.

36. At the time Plaintiffs completed the purchase order and RISC, Vaccaro falsely and deceptively represented that the Dealership had taken care of the registration, and provided Plaintiffs with a falsified registration certificate.

37. On March 30th, the Vehicle's check engine light came on.

38. On April 9th, Brantley brought the Vehicle back to the dealership so that they could repair the issues relating to the check engine light, as well as problems with the glove box cover, the horn, the arm rest cover, the air conditioning and vents.

39. The Vehicle was not returned to Brantley until April 13th, and the majority of the problems had not been repaired. At this time, Brantley was instructed to bring the car back at a later date for repairs relating to the check engine light.

40. On April 19th, Brantley returned to the Dealership with the Vehicle for repair work relating to the engine and horn.

41. The Vehicle was returned to Brantley on April 23rd. Brantley noticed at this time that the Dealership had merely glued the glove compartment cover on and had not repaired it.

42. On April 27th, the Vehicle's check engine light came on again, and the Vehicle's horn had stopped working again.

43. On May 7th, Brantley brought the Vehicle to the Dealership for additional service to the horn and the check engine light.

44. On May 11th, the Vehicle was returned to Brantley. At this time, the horn functioned properly, but the check engine light remained on.

45. On May 25th, Brantley contacted the Dealership because she had not heard from them regarding the repair of the check engine light. The representative with whom Brantley spoke told her that he would have someone else look at the car.

46. On May 26, 2012, Brantley was stopped by a police officer and was issued a citation for driving without registration.

47. Unbeknownst to Plaintiffs, the registration certificate that the Dealership provided to them was not valid.

48. On July 8, 2012, Brantley was pulled over a second time for driving without registration. For this, Brantley was detained and the Vehicle was impounded.

49. The Dealership violated TILA when it failed to credit Plaintiffs for their $695 payment on the RISC, when it failed to include the $695 payment as part of the amount financed and as part of the payment schedule, and when it failed to provide Plaintiffs with a copy of the RISC or comparable TILA-mandated disclosures in a form that they could keep.

50. As a result of the Dealership's failure to comply with TILA, Plaintiffs suffered an ascertainable loss in that they were deprived of disclosures to which they are legally entitled, and they were charged interest on the Vehicle prior to delivery.

51. Through its above-described violations of TILA, the Dealership also violated RISFA and CUTPA.

52. In an attempt to induce Plaintiffs to complete the transaction, the Dealership falsely represented to Plaintiffs that the Vehicle had been registered, and, at the time it made the representation to Plaintiffs, it was aware of the falsity of its statement, and Plaintiffs reasonably relied on this statement.

53. As a result of the false representations concerning the Vehicle's registration, Plaintiffs suffered actual damages, including, but not limited to, the detention of Plaintiff Brantley, loss of the vehicle, citation fees, and Vehicle impound costs and fees.

54. By its above-described conduct, the Dealership committed fraud and violated CUTPA.

55. By falsely making a Connecticut Registration Certificate and presenting it to Plaintiffs as a valid certificate of registration, the Dealership committed forgery and is liable to Plaintiffs for double damages pursuant to Conn. Gen. Stat § 52-565.

56. As a result of the above-described forgery Plaintiffs suffered an ascertainable loss including, but not limited to, the detention of Plaintiff Brantley, loss of the vehicle, citation fees, and Vehicle impound costs and fees.

57. By forging the Connecticut Registration Certificate, the Dealership violated CUTPA.

58. By selling Plaintiffs a vehicle that was not in merchantable condition, the Dealership violated Magnuson-Moss, and breached the implied warranty of merchantability.

59. The Dealership's affirmation that it would repair the Vehicle became part of the basis of the bargain with Plaintiffs.

60. Through its failure to adequately repair the vehicle, as described above, the Dealership is liable for breach of express warranty and breach of contract.

61. As a result of the Dealership's breaches of the express and implied warranties, Plaintiffs suffered an ascertainable loss, including, but not limited to, loss of use of the Vehicle.

62. By its breaches of the express and implied warranties, the Dealership also violated CUTPA.

63. By indicating on the RISC that Brantley had traded in a 1999 Toyota Corolla when, in fact, she had traded in a 2001 Ford Focus, the Dealership committed fraud.

64. On or around August 3, 2012 Plaintiffs, through counsel, sent written notice of their claims to the Dealership and Wells Fargo, and revoked acceptance of the Vehicle.

65. Alternatively, Plaintiffs, through counsel, asserted in the August 3, 2012 letter that they had rescinded the contract.

66. Prior written notice of Plaintiffs' claims was given to Dealership and Wells Fargo, and under the terms of the contract and in accordance with Conn. Gen. Stat. § 52-572g, Wells Fargo is liable to Plaintiffs for their claims up to the amount paid under the contract plus the amount of outstanding indebtedness thereunder.

**Wherefore, Plaintiffs claim**, actual damages and common law punitive damages for the fraud claims; double damages pursuant to C.G.S. 52-565; actual money damages pursuant to 15 U.S.C. §1691e(a), punitive damages of $10,000 pursuant to 15 U.S.C. §1691e(b), and attorney's fees and costs of this action pursuant to 15 U.S.C. §1691e(d); actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); statutory damages pursuant to C.G.S. § 36a-787; damages pursuant to C.G.S. § 42a-2-714; damages, reasonable attorney's fees, and costs pursuant to 15 U.S.C. § 2310(d); statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); damages pursuant to Conn. Gen. Stat § 52-565;  revocation of acceptance or, alternatively, an order declaring that the contract is rescinded and directing return of all moneys paid to Plaintiffs;  an order from the Court ordering the Dealership to cease and desist from engaging in unfair and deceptive trade practices; and such other further relief to which Plaintiffs are, at law, or in equity and by statute, entitled to against the Dealership and Wells Fargo.

**PLAINTIFFS, SIERRA BRANTLEY AND LIETTE PELLETIER**

By: /s/Daniel S. Blinn
Daniel S. Blinn, ct02188
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com